UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ALICIA I. GRALEWICZ,**

**Plaintiff,**

**v.** **Case No. 2:25-CV-00597-SCD**

**FRANK J. BISIGNANO,**
***Commissioner of Social Security,***

**Defendant.**

---

# DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

---

Alicia I. Gralewicz seeks Social Security benefits based on several physical and mental impairments. After a hearing, an administrative law judge denied her claims, finding that she could still perform some light work.

Gralewicz seeks judicial review of that decision under 42 U.S.C. § 405(g). She raises multiple challenges to the ALJ's decision, including how he evaluated two medical providers opinions, the state-agency opinions, and her subjective symptoms. The Commissioner responds that, read as a whole, the ALJ's decision sufficiently explains how he considered the supportability of Lehmann's opinion. I conclude that the ALJ failed to explain, as the regulations require, how he considered the supportability of Lehmann's opinion and that this error was not harmless. I therefore remand the Commissioner's decision. Because I conclude the ALJ failed to evaluate Lehmann's opinion properly, I address that issue first and do not reach the others.

## BACKGROUND

In 2019, Gralewicz applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. *See* R. 30.[1] She initially alleged that she became disabled in January 2019 but later amended her alleged onset date to July 2020, when she stopped working. *See* R. 1328. She remained insured through December 2024. *Id.*

### I. Personal and Medical History

Gralewicz's mental-health history included adjustment disorder, mixed personality disorder, posttraumatic stress disorder, borderline intellectual functioning, and major depressive disorder. R. 1328. Gralewicz was 49 years old on her amended alleged onset date. *See* R. 1328, 1343. She previously worked as a receptionist and telephone operator, but she stopped working in July 2020 when she was terminated for insubordination, inappropriate behavior, and refusal to follow procedures. *See* R. 1328, 1343; 426.

In 2019, Gralewicz began psychological treatment with Dr. Michael Cichy. *See* R. 879. From July through November 2020, Dr. Cichy generally observed that Gralewicz was friendly, cooperative, polite, easily engaged, and fully oriented. R. 2000–08. He also documented occasional anxiety or depressed affect, pressured or hyperverbal speech, and variations in Gralewicz's mood. *See id.*

In July 2020, Dr. Cichy assessed Gralewicz's work-related mental abilities. Most of his ratings reflected satisfactory abilities or only mild or moderate limitations. *See* R. 1234–39. But he also concluded that Gralewicz was seriously limited in her ability to maintain a

[1] The transcript is filed on the docket at ECF No. 11-1 to 11-20.

consistent pace without unreasonable rest periods and would likely miss about three days of work each month. *See* R. 1236, 1239.

After Gralewicz stopped seeing Dr. Cichy in November 2020, the mental-health record became sparse. The record shows little mental-health treatment between December 2020 and the end of 2022. R. 1336. At a November 2021 primary-care appointment, Gralewicz exhibited normal speech, thought processes, and affect. *Id.*

A different picture emerged during Gralewicz's September 2022 consultative psychological examination with Dr. Thomas Lehmann. *See* R. 2500–06. During the examination, she was cooperative and talkative, with no obvious difficulty focusing on the tasks. *See* R. 2502–04. Yet Dr. Lehmann also observed an anxious mood, below-average memory, limited insight, cognitive slowing, and deficiencies in arithmetic, abstraction, practical judgment, and general knowledge. *See* R. 2502–04. Further testing revealed an IQ score of 70. R. 2505. Dr. Lehman diagnosed borderline intellectual functioning, major depressive disorder, and posttraumatic stress disorder. *See* R. 2501–05.

Dr. Lehmann opined that Gralewicz could understand, remember, and carry out simple job tasks and had a fair ability to maintain attention, concentration, and pace on simple, familiar tasks. R. 2505. At the same time, he assessed other, more serious limits: a moderate-to-severe limitation in responding to supervisors and coworkers, a severe limitation in withstanding ordinary workplace stress, and marked limitations in making simple work-related judgments, interacting appropriately with others, and responding appropriately to ordinary work situations and routine changes. *See* R. 2495–96, 2505.

## II. Administrative Proceedings

This case has a lengthy administrative history. An ALJ first denied Gralewicz's application in September 2020. R. 27. After Gralewicz sought judicial review, the parties stipulated to reversal and remand, which the court ordered. *See* R. 1537–39.

The same ALJ again denied Gralewicz's application in December 2022. *See* R. 1548–72. In June 2023, the Appeals Council vacated that decision and remanded the matter again. R. 1584–89. The Appeals Council directed the ALJ to re-evaluate the medical opinion evidence under the social security regulations governing supportability and consistency. *See* R. 1587–89. The Council identified concerns with the ALJ's evaluation of Dr. Lehmann's opinion and observed that his 2022 examination "suggests a deterioration in mental functioning." R. 1588. On remand, Gralewicz appeared for a third administrative hearing before a different ALJ. *See* R. 1385–1423.

The new ALJ again found Gralewicz not disabled. R. 1325–45. Applying the five-step evaluation process, the ALJ found several severe physical and mental impairments. R. 1328. To determine whether Gralewicz's mental impairments met or equaled a listed impairment, the ALJ evaluated four broad areas of mental functioning and found moderate limitations in each: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *See* R. 1330–32. In support, the ALJ cited Gralewicz's daily activities and examinations, which generally documented normal memory, attention, judgment, behavior, mood, and social interaction. *Id.*

Between steps three and four, the ALJ assessed Gralewicz's residual functional capacity (RFC)—the most she could do despite her limitations. The ALJ found that

Gralewicz could perform light work with additional physical and mental restrictions. R. 1331. Mentally, the ALJ limited Gralewicz to simple instructions and work-related decisions; attention and concentration in two-hour segments; occasional changes in a routine work setting; and occasional interaction with supervisors, coworkers, and the public. *Id.*

The ALJ next evaluated the opinions of Drs. Cichy and Lehmann. The ALJ rejected Dr. Cichy's conclusions about maintaining pace and missing work because neither the opinion nor the treatment notes adequately justified those restrictions. *See* R. 1339–40. He did, however, find Dr. Cichy's opinion somewhat persuasive to the extent it supported no more than moderate limitations, consistent with the ALJ's earlier paragraph-B findings.[2] *Id.*

The ALJ found Dr. Lehmann's opinion unpersuasive. R. 1341. The ALJ relied on the limited examining relationship with Lehmann, contrasted his findings with Dr. Cichy's longitudinal observations, and pointed to other evidence the ALJ believed showed greater mental functioning than Dr. Lehmann assessed. *Id.* He concluded that the mental limitations in the RFC adequately accounted for Gralewicz's impairments. *Id.*

At step four, the ALJ found that Gralewicz could not perform her past work as a receptionist or telephone operator. R. 1343. At step five, relying on the vocational expert's testimony, the ALJ found that Gralewicz could perform other jobs. *See* R. 1343–44. The ALJ therefore concluded that Gralewicz had not been disabled. R. 1344–45. The Appeals Council found no reason to change the latest hearing decision and declined to assume jurisdiction over Gralewicz's case, making the ALJ's decision final. *See* R. 1278–81. This action followed.

---

[2] These four areas of mental functioning are known as the "paragraph B" criteria. The Social Security Administration measures the paragraph B criteria on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

## LEGAL STANDARD

Section 405(g) governs judicial review of the Commissioner's decision under the Social Security Act. Federal courts may affirm, modify, or reverse the Commissioner's decision. A court reverses "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). When the challenge concerns legal error, the court asks whether the ALJ applied the correct legal standards. *See id.* An ALJ's failure to follow the governing regulations requires remand unless the error is harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Consistent with that limited role, the court does not reweigh conflicting medical evidence or decide which opinion is most persuasive. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

## DISCUSSION

Gralewicz seeks remand, arguing that the ALJ inadequately evaluated Dr. Lehmann's opinion. She contends that the ALJ addressed the opinion's consistency with other records, but not whether Dr. Lehmann's own findings and explanations supported the limitations he assessed. Gralewicz argues that this omission prevents the court from meaningfully reviewing the ALJ's finding that Dr. Lehmann's opinion was unpersuasive.

### I. The ALJ Explained Consistency, but Not Supportability

The parties' dispute turns on a narrow question: Did the ALJ merely recount Dr. Lehmann's findings, or did he explain whether Lehmann's findings and explanations supported the limitations Lehmann assessed? Clinical findings and test results may document impairments and deficits without specifying how those impairments limit a claimant's ability to work. Medical opinions bridge that gap by translating examination findings and test results

into assessments of the claimant's ability to work. *See* 20 C.F.R. § 404.1513(a)(2).[3] How the ALJ evaluates those opinions can therefore affect the RFC limitations and, ultimately, whether the claimant can work. *See Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (recognizing that limitations omitted from the RFC may affect whether the claimant is found capable of other work).

Gralewicz argues that the ALJ addressed only consistency and Dr. Lehmann's limited examining relationship. That is, she argues, he never explained whether Lehmann's own findings and explanations supported the limitations he assessed. The Commissioner responds that the court should not confine its review to the paragraph discussing Lehmann because the decision must be read as a whole. In his view, the ALJ's discussion of Lehmann's findings and comparison with Cichy's observations supplies any missing supportability analysis. The question, then, is whether the ALJ's discussion elsewhere in the decision supplies the required supportability analysis.

Section 404.1520c helps answer that question. The ALJ evaluates medical opinions using five factors: supportability, consistency, the source's relationship with the claimant, specialization, and other relevant considerations. *See* 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(a), (b)(2). Supportability looks inward: it asks how well the medical source supports the opinion with objective medical evidence and supporting explanations. *See* 20 C.F.R. § 404.1520c(c)(1). By contrast, the consistency factor asks how well the opinion corresponds with other medical and nonmedical evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2).

---

[3] The regulations governing the evaluation of medical evidence in disability claims under Titles II and XVI are materially identical. Accordingly, citations are to the Title II regulations.

The ALJ must explain how he considered supportability and consistency for a medical source's opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered the remaining factors—the source's relationship with the claimant, specialization, and other relevant considerations. *Id.*

The required explanation need not be elaborate. The Seventh Circuit requires the ALJ to articulate his reasoning only minimally. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). An ALJ need not use the word "supportability," address every item of evidence, or repeat the same analysis in multiple parts of the decision. *See id.* But minimal articulation is not no articulation. The court must be able to tell that the ALJ did more than recount the provider's findings; he must also evaluate whether those findings support the provider's assessed limitations. *See Saucier v. Kijakazi*, No. 21-CV-1441, 2022 WL 4017424, at *4, 2022 U.S. Dist. LEXIS 158837, at *8–9 (E.D. Wis. Sept. 2, 2022) (finding an ALJ's reliance on findings in a treating physician's notes insufficient to discount the physician's opinion where the ALJ did not explain how those findings were inconsistent with the physician's assessed functional limitations).

For example, if a doctor says that a person can stand for only ten minutes, his notes showing that the person had trouble standing, became unsteady, or had to sit down after a short time might support that limit. Notes showing no trouble standing or walking, with no explanation for the ten-minute limit, might not. That is the supportability inquiry: do the doctor's own findings and explanation actually support the limitation the doctor assessed?

The supportability question here asks how well the ALJ addressed Dr. Lehmann's analysis of Gralewicz's limitations. Lehmann opined that Gralewicz could understand, remember, and carry out simple tasks. R. 2505. He nevertheless assessed marked limitations

with making simple work-related judgments and following complex instructions. He also assessed moderate-to-severe limitations in responding appropriately to supervisors and coworkers and a severe limitation in tolerating ordinary workplace stress and adapting to changes. *Id.*

In explaining those conclusions, Lehmann relied on both clinical observations and standardized testing. He documented mild cognitive slowing, impaired recent and remote memory, difficulty with arithmetic and abstraction, and borderline practical judgment. R. 2500–05. On the WAIS-IV, Gralewicz received an IQ score of 70, which led Dr. Lehmann to consider mild intellectual disability. *Id.* Regarding social functioning, he noted some eye contact, an abnormal interaction style, spontaneous irritation at perceived laughter, very limited psychological insight, poor coping skills, projection, and cluster B personality features. R. 2496, 2500, 2502–05.

The examination was not uniformly abnormal. Lehmann assessed a fair ability to concentrate on familiar sequential tasks and observed no obvious difficulty maintaining attention. R. 2504–05. These mixed findings underscore why the ALJ needed to address supportability: the ALJ had to evaluate how well Lehmann's own findings supported the limitations he assessed. The ALJ did not provide that explanation when discussing Lehmann's opinion.

To reject Lehmann's opinion, the ALJ relied on the following points:

1) Lehmann was not a treating provider;
2) his observations and testing arose from limited interactions with Gralewicz;
3) the "overall evidence" supported greater functioning than Lehmann assessed, as reflected, for example, in Cichy's generally normal observations;

4) Cichy's opinion was more persuasive because it arose from a treating relationship rather than a single evaluation;
5) Gralewicz received conservative and intermittent treatment and held several part-time jobs;
6) Lehmann's IQ testing was "entirely inconsistent" with Gralewicz's education (at least some college completion) and skilled work history; and
7) the RFC accommodated any mental limitations supported by the record. R. 1341.

None of the ALJ's stated reasons directly addresses the supportability of Dr. Lehmann's opinion. The first, second, and fourth reasons primarily concern the treatment relationship. The regulations treat the medical source's relationship with the claimant as a factor distinct from supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(3) (listing supportability, consistency, and relationship with the claimant as separate factors). These reasons explain Dr. Lehmann's lack of familiarity with Gralewicz; they do not evaluate the connection between Lehmann's own testing, observations, explanations, and assessed limits. The limited interaction could also bear on supportability if the ALJ explained how it left Lehmann's assessed limitations insufficiently supported by his own evidence or explanation.

The third and fifth reasons compare Dr. Lehmann's opinion with other record evidence, while the sixth compares his IQ finding with Gralewicz's education and work history. Each is an external comparison bearing on consistency. The seventh merely states the result; it does not explain how the ALJ evaluated Lehmann's evidence. Thus, the ALJ explained why Lehmann's opinion conflicted with other evidence and relied separately on Lehmann's limited examining relationship with Gralewicz. However, the ALJ did not

explain whether Lehmann's own examination findings, testing, and explanations supported the limitations he assessed.

The Commissioner is correct that the court may look beyond the paragraph that evaluates Lehmann's opinion for the supportability analysis—but only up to a point. The Seventh Circuit in *Zellweger v. Saul* permits a reviewing court to consider reasoning that appears elsewhere in the ALJ's decision. 984 F.3d 1251, 1252, 1254–55 (7th Cir. 2021). Holistic review was appropriate in that case because the ALJ's later RFC discussion supplied the reasoning missing from the earlier portion of the decision. *Id.* at 1254. But *Zellweger* also recognized that a court may not uphold an agency decision based on a rationale that "did not appear anywhere in the ALJ's opinion." *Id.*

The Commissioner invokes that principle here, arguing that the missing supportability analysis can be found elsewhere in the decision. The Commissioner first points out that the ALJ earlier summarized Dr. Lehmann's examination. R. 1336, 1341. That discussion shows that the ALJ knew what Lehmann found. But recounting those findings is not the same as deciding whether they supported Lehmann's limits. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

The Commissioner's other cited reasoning fares no better. The Commissioner says, "this Court can trace why the ALJ found that Dr. Cichy provided a better supported opinion of Plaintiff's social functioning than Dr. Lehman," and "Dr. Lehman alone observed them and Plaintiff behaved and interacted normally during numerous of Dr. Cichy's exams." Def.'s Br. at 7–8. But that reasoning compares Lehmann's opinion and findings with evidence from another medical source. It therefore bears on consistency, not supportability. I decline to collapse the medical-opinions analysis into a totality-of-the-circumstances persuasiveness

inquiry. Doing so would ignore that the regulation separately requires the ALJ to explain how he considered supportability. The regulation is explicit: supportability and consistency "are the most important factors," and the agency "will explain how [it] considered" both. 20 C.F.R. § 404.1520c(b)(2). Given the clarity of the regulation, a reviewing court should not have to excavate the decision to locate the ALJ's supportability analysis.

This isn't a ticky-tack foul here because the Appeals Council had already identified the *same* supportability problem. It remanded the case in part because the prior ALJ had not adequately evaluated the supportability of Dr. Lehmann's opinions. R. 1587–89. Although the Appeals Council identified the missing analysis, the new decision left the supportability question unanswered.

The decision shows that the ALJ knew what Lehmann found and believed that his conclusions conflicted with the record. That comparison explains consistency. What the decision does not reveal is whether the ALJ evaluated how well Lehmann's findings supported the restrictions he assessed. The ALJ therefore failed to explain supportability as required by 20 C.F.R. § 404.1520c and thus committed legal error.

**II. The Supportability Error Was Not Harmless**

The remaining question is whether the ALJ's error requires remand. The Commissioner argues that it does not because the ALJ's "core and undisputed reasoning should withstand any error." Def.'s Br. at 8. He emphasizes that "Dr. Cichy and every other provider and expert observed Plaintiff think, concentrate, interact, and behave, at worst, with very limited abnormalities." *Id.*

An error is harmless when the court is "convinced that the ALJ will reach the same result" if remanded. *McKinzey*, 641 F.3d at 892. Put another way, the court asks whether it

can "predict with great confidence what the result of remand will be." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). The question is not whether the ALJ could permissibly reject Dr. Lehmann's opinions after assessing supportability. He might. The question is whether I can predict with great confidence that the ALJ *would* reach the same result. I cannot.

Dr. Lehmann assessed limitations materially more restrictive than the RFC, including marked limitations in work-related judgment, interaction with others, and responding appropriately to ordinary work situations and changes. *See* R. 2495–96, 2505. By contrast, the ALJ limited Gralewicz to simple work-related decisions and occasional workplace changes and interactions with supervisors, coworkers, and the public. R. 1331. Lehmann's examination also contained findings that could support those greater restrictions: an IQ score of 70, impaired arithmetic and abstraction, borderline judgment, poor coping skills, limited insight, and abnormal social interaction style. R. 2502–05. That omission mattered because Lehmann's opinion could have supported greater restrictions in the RFC.

Even so, the ALJ may reasonably conclude, after evaluating supportability, that Dr. Lehmann's restrictions remain unpersuasive. But the evidence is not so one-sided that I can predict with great confidence that a proper supportability evaluation would produce the same result without weighing that evidence myself. The error was therefore not harmless.

## CONCLUSION

In sum, the ALJ failed to adequately explain how he considered the supportability of Dr. Lehmann's opinions, and that error was not harmless. Accordingly, I **REVERSE** the Commissioner's decision and **REMAND** this matter for further proceedings. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 15th day of September, 2026.

STEPHEN C. DRIES
United States Magistrate Judge